IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

**FILED**

FEB 0 7 2018

Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| DANNY LEE WARNER, JR., | |
| Plaintiff, | CV 17-104-M-DLC-JCL |
| vs. | ORDER, and FINDINGS AND RECOMMNEDATION |
| CHUCK CURRY, JENNIFER ROOT, JAMES DUSING, TAMMY BOWEN, SGT. SCHUELEN, and CBM MANAGED SERVICES, | |
| Defendants. | |

Plaintiff Danny Warner, appearing pro se, commenced this action with his complaint and his motion requesting leave to proceed in forma pauperis under 28 U.S.C. § 1915. The Court granted Warner's motion.

Federal law applicable to in forma pauperis proceedings requires the Court to conduct a preliminary screening of the allegations set forth in the litigant's pleading. The applicable provisions of section 1915(e)(2) state as follows:

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that–

(A) the allegation of poverty is untrue; or

1

(B) the action or appeal–

>>(i) is frivolous or malicious;

>>(ii) fails to state a claim on which relief may be granted; or

>>(iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

The Court will review Warner's pleading to consider whether this action can survive dismissal under the provisions of section 1915(e)(2), or any other provision of law. *See Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1138, 1142 (9th Cir. 2005).

I.   Background

On November 23, 2016, Warner was arrested by law enforcement officers and incarcerated at the Flathead County Detention Center ("FCDC") in Kalispell, Montana. This action arises from events that occurred at the FCDC while Warner was held in custody awaiting resolution of criminal charges that were pending against him. On December 4, 2017, Warner filed a notice of his change of address establishing that he is now incarcerated at the Montana State Prison in Deer Lodge, Montana.

A.   Medical Conditions

When Warner arrived at FCDC he informed Defendant Tammy Bowen, a

nurse, that he had neck, back and hip injuries, and he was taking the following medications: Gabapentin and Tramadol. Warner requested his medications, but Bowen explained to him that only the doctor, Defendant James Dusing, could prescribe medications for him.

Warner states Dusing refused to prescribe medications without first reviewing Warner's medical records. Dusing did not obtain Warner's medical records, and refused to order necessary medical tests to assess Warner's injuries and medication needs.

Warner also complained to Defendant FCDC Commander Jennifer Root about his pain and medications. But Root similarly informed Warner that only Dusing could prescribe medications.

At some point Dusing informed Warner that due to FCDC policy he could not prescribe Tramadol or Tylenol 3, or order an MRI or other tests. Instead Dusing prescribed a muscle relaxer for Warner which allegedly exacerbated his injuries and pain. Warner states he "could barely walk", and "FCDC" would not do anything for him.

In May, 2017, Dusing finally ordered Tramadol for Warner's pain even though Dusing still had never ordered tests or reviewed Warner's medical records.

The provision of Tramadol, however, was short-lived as Warner states the

3

prescription was later "altered" and he was again in pain. He alleges Dusing

subsequently refused to provide the pain medication after the alteration occurred.

Thus, Warner states he continued in pain for a total of 8 months.

Warner asserts that Defendants Flathead County Sheriff Chuck Curry,

Dusing, Root and Bowen were all made aware that their deliberate indifference to

his medical needs was illegal. But he provides no supporting facts relative to this

specific assertion.

Warner next complains about his eye care at FCDC. He states he is legally

blind, that he requested an eye exam and eye glasses, but he was told he would

have to pay for his eyesight treatment. He alleges "Defendants Bowen, Dusing,

Root, and Curry have all denied Plaintiff medical attention for his eyes[,]" but he

does not provide further facts supporting this allegation.

B.    Nutritional Matters

Warner states he has Celiac disease and needs a gluten-free diet. But the

gluten-free meals he received were not nutritionally adequate, and Defendant CBM

Managed Services – the contractor obligated to provide meals at FCDC – did not

follow a menu that was approved by a dietician. He states the food portions were

too small and the protein content was too low. Some food he received contained

gluten, and some food was rotten and uncooked. He complains that CBM Managed Services did not provide fresh fruit and vegetables, and the bread was "unhealthy."

Warner alleges he experienced various medical problems as a result of the nutritional situation. He experienced vitamin deficiencies, weight loss, constipation, severe cramps, stomach problems, irregular bowel movements, and pain which required that he receive an expensive CT scan of his stomach.

Warner alleges Defendants CBM Managed Services, Root and Curry were "all aware that meals at FCDC [were] nutritionally inadequate." And he alleges they each were deliberately indifferent to inmates' health.

C.    Access to Courts

Warner alleges the FCDC facility did not have an adequate law library. He asserts the lack of resources "severely hampered his ability to prepare a defense" in his criminal case.

Warner further complains FCDC denied him paper, a notary, and a phone when he had a prearranged call with an attorney. He states Defendant Sgt. Schuelen was aware of these circumstances.

Warner was also denied manila envelopes, and was later charged a high fee for the envelopes. He alleges "Defendants Root and Curry are responsible for these violations and denying access to the courts."

Warner states he also requested Defendant Root provide him with copies of his intake and medical records which he needed for his criminal case. Root refused to provide them, and Root required Warner to subpoena the records. But even after Warner got a subpoena he states he received only portions of his records. Warner alleges Defendant Curry "was made aware of this issue" but ignored it.

D.   Punitive Isolation

Warner alleges he was placed in "punitive isolation on several occasions without due process of law[,] and Defendant Schuelen has been responsible for most of these." He asserts he was held in his cell by himself in retaliation for grievances he filed at FCDC. He states that during the isolation process he was not informed of any rule violation, was not allowed to speak, and was not afforded a hearing. He complains the circumstances constitute arbitrary "punishment" which he asserts is illegal for a pretrial detainee.

In one isolation incident Warner was afforded a hearing, but Defendant Root did not allow Warner to call witnesses. And Warner did not receive a written report until 4 weeks after the hearing. He contends Defendants Root and Curry are directly responsible for those matters, but he provide no further specific supporting facts.

6

E.    Mail and Publications

Warner alleges he was not allowed to have his mail on a couple occasions while at FCDC, and his mail was held with his property. He also complains FCDC had a "blanket ban on all publications." He asserts Defendants Root and Curry were made aware of the matters but that they were deliberately indifferent to the circumstances. But he does not provide further supporting facts as to their conduct.

F.    Searches and Seizures

Warner alleges he was subjected to searches every day when he was at FCDC. And he was subjected to thorough "shakedowns about every ten days." Officers went through his legal materials, made copies of the materials, and gave the copies to the "deputy attorney." Warner alleges Defendants Schuelen, Root, and Curry were informed of theses searches but that they have no "regard for the Constitution."

II.    Discussion

Because Warner is proceeding pro se the Court must construe his pleading liberally, and the pleading is held "to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *See also Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Although the Court has authority to dismiss a defective pleading pursuant to 28 U.S.C. § 1915(e)(2),

7

a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

A.     42 U.S.C. § 1983

Warner's pleading asserts that his claims arise from alleged violations of his civil rights protected under the United States Constitution. The claims are cognizable under 42 U.S.C. § 1983, thereby invoking the federal question jurisdiction of this Court pursuant to 28 U.S.C. § 1331.

Section 1983 permits claims under federal law against a local governmental entity, or a state official or employee, if the plaintiff can establish that the defendant was (1) acting under color of state law, and (2) deprived the plaintiff of a federal right secured by the Constitution or laws of the United States. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). All of Warner's claims must be analyzed under this basic framework.

B.     Individual Defendants - Personal Conduct

A claim under 42 U.S.C. § 1983 against an individual defendant requires factual allegations demonstrating that the individual personally participated in, and was integrally involved in the alleged unlawful conduct. *Torres v. City of Los*

8

*Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008). For liability to exist an individual must be an actual and integral participant as opposed to a mere bystander; each individual's liability must be based on his or her own personal conduct. *Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996). The individual's own conduct must have caused a constitutional deprivation. The focus is on the specific facts of each individual's personal acts or omissions, and the direct causal connection between those acts and the constitutional violation. *Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988).

      C.      <u>Individual Defendants - Supervisor's/Administrator's Personal Acts</u>

      Warner's allegations also seeks to plead claims against supervisory or administrative individuals, such as Curry and Root. But such individuals can only be held liable under section 1983 if they themselves personally violated a constitutional right. *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009). A supervisor may be liable:

> if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.

*Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quotation and citation omitted).

      More specifically, a supervisor may be liable: (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by

9

others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a reckless or callous indifference to the rights of others. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).

D.   Medical Care - Fourteenth Amendment Standards

Warner's allegations indicate he was incarcerated at FCDC while awaiting resolution of criminal charges pending against him. Therefore, the Court will analyze his claims based on his status at the time as a pretrial detainee.

A pretrial detainee's rights relative to conditions of confinement and medical care are addressed under the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment's prohibition against cruel and unusual punishment applicable to convicted inmates. *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003). In any case, regardless of whether a person is a pretrial detainee or a convicted prisoner, prison officials and jailers are required to provide inmates with constitutionally adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

The standards of medical care imposed under the Eighth Amendment provide the minimum standards applicable to a jailer's obligation to provide medical care to a pretrial detainee. *Oregon Advocacy Center*, 322 F.3d at 1120. But those minimum standards have been augmented by recent decisional law in the field of pretrial detainees' Fourteenth Amendment rights advanced in claims under 42 U.S.C. § 1983. In accordance with *Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466 (2015) and *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016),[1] a pretrial detainee's Fourteenth Amendment claim for the denial of medical treatment must be supported by allegations which plausibly demonstrate that:

> (1) The plaintiff made a request for medical care; (2) The plaintiff had a serious medical need; (3) The defendant did not take reasonable steps to obtain or provide medical care, even though a reasonable officer (or reasonable medical staff) in the circumstances would have appreciated the high degree of risk involved—making the likelihood of harm obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Guerra v. Sweeny*, 2016 WL 5404407, *3 (E.D. Cal. 2016).

---

[1] In *Kingsley*, the Supreme Court concluded that the Eighth Amendment's subjective standard which takes into account the defendant's actual knowledge and state of mind is not applicable to a pretrial detainee's claim for excessive force under the Fourteenth Amendment. *Castro*, 833 F.3d at 1068-69. Instead, a pretrial detainee's Fourteenth Amendment claim need only establish that the defendant's conduct "was objectively unreasonable" (*Kingsley*, 135 S. Ct. at 2473), a standard that is something "more than negligence but less than subjective intent – something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

Warner alleges Dusing was aware of his neck, back, and hip injuries, the medications he had been taking, and the pain he was experiencing. But from late November, 2016, to sometime in May, 2017, Dusing refused to prescribe the medications Warner needed to address his pain. And although Dusing prescribed Tramadol in May, 2017, Warner states that prescription was later altered and he was again in pain. Dusing then refused to provide the pain medication again.

With liberal construction of Warner's allegations, the Court finds the facts he alleges against Dusing at least state a claim upon which relief could be granted if the facts are proven to be true. Thus, the Court will require Dusing to respond to Warner's pleading.

Warner's allegations against Bowen, Root, and Curry regarding his injuries and pain, however, are insufficient to state a claim for relief. Bowen and Root each responded to Warner's complaints of pain, but as they explained to Warner, they each lacked authority to prescribe medicine for Warner as he requested. Only the doctor – Dusing – could prescribe the requested medication. Thus, Warner's allegations do not indicate Bowen and Root failed to take reasonable steps to obtain or provide medical care given their lack of medical authority. Warner's medical care claims against them should be dismissed.

With respect to Curry, Warner has sued him in his capacity as the Sheriff of Flathead County who is responsible for the general operation of FCDC and, therefore, he sues Curry in his capacity as a supervisor. But Warner does not plead any facts suggesting that Curry had any direct personal involvement with, or a causal connection to Dusing's conduct in failing to prescribe medications for Warner. Warner does not plead any facts which satisfy the legal standards discussed above to impose liability upon Curry for Warner's medical care for his injuries and pain at FCDC, and those medical claims against Curry should be dismissed.

With regard to Warner's eye treatment, he alleges "Bowen, Dusing, Root, and Curry have all denied Plaintiff medical attention for his eyes[.]" Warner does not provide any further allegations of facts describing what each of those Defendants did. These bare allegations do not address the necessary elements of his claim for the denial of medical care for his eyes under *Guerra*, supra, and his claims are subject to dismissal.

But because Warner affirmatively alleges these four Defendants "denied" him eye treatment, in view of Warner's pro se status the Court will afford him an opportunity to amend his allegations. In preparing an amended pleading Warner must set forth facts which plausibly suggest that each individual Defendant –

13

Bowen, Dusing, Root and Curry –engaged in direct, personal conduct that violated his rights under the Fourteenth Amendment under the elements identified in *Guerra*.

    E.   <u>Nutrition</u>

With respect to the food provided to Warner at FCDC, the law provides that when a person is taken into custody and held as a pretrial detainee, the government "must provide for the person's 'basic human needs – e.g. food, clothing, shelter, medical care, and reasonable safety.'" *Doe v. Kelly*, 878 F.3d 710, 714 (9th Cir. 2017). Food is one of life's basic necessities protected by the Eighth Amendment. *Foster v. Runnels*, 554 F.3d 807, 812-13 (9th Cir. 2009), and *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996).

The Eighth Amendment "requires only that prisoners receive food that is adequate to maintain health." *Foster*, 554 F.3d at 813 n.2. But where an inmate alleges he has suffered physical manifestations as a result of inadequate nutrition, such allegations are sufficient to state a cognizable claim – they indicate the deprivation is objectively sufficiently serious. *Id.*

Based on the foregoing, Warner's allegations indicate the circumstances of the food and nutrition provided to him at FCDC, and the deficiencies in the food were objectively sufficiently serious. In substance, he alleges the food was not

adequate to maintain health, and he suffered physical manifestations as a result.

And Warner alleges Defendants CBM Managed Services, Root and Curry were "all aware that meals at FCDC [were] nutritionally inadequate," but were deliberately indifferent to inmates' health. Thus, Warner's allegations need to be served on those Defendants for their response.

F.    Access to the Courts

Warner alleges Defendants deprived him of an adequate law library and numerous other resource items which hampered his ability to defend himself in the criminal proceedings in which he was involved at the time he was incarcerated at FCDC. He contends the actions deprived him of his right of access to the courts.

Inmates have a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). This includes "both a right to meaningful access to the courts and a broader right to petition the government for a redress of his grievances." *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011), invalidated on other grounds by *Coleman v. Tollefson*, ___U.S. ___, 135 S. Ct. 1759 (2015). There are two types of access to the courts claims: "those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference." *Silva*, 658 F.3d at 1102.

To show a violation of either type of right to access to the courts, an inmate

15

must demonstrate he or she experienced an "actual injury," in that there was a specific instance in which he was denied access. *Lewis v. Casey*, 518 U.S. 343, 349-352 (1996). An inmate must show that alleged deficiencies in active assistance, or incidents of interference actually prevented the inmate from pursuing and filing a non-frivolous legal claim, or caused the dismissal of a viable action. *Id.* at 351. Also, the injury requirement is "not satisfied by just any type of frustrated legal claim." *Id.* at 354-55. The right only attaches to specific types of claims – the requisite actual injury occurs only if an inmate is denied access with regard to a direct appeal from their conviction, habeas petitions, or civil rights actions challenging the conditions of their confinement. *Id.*

Here, Warner contends the circumstances at FCDC hindered his efforts to defend himself in his criminal case. But he has not sufficiently alleged that he suffered any actual injury. He does not identify any actual adverse consequence he experienced in his criminal case caused by the alleged inadequacies of the legal resources available to him in FCDC.

More importantly, the circumstances of Warner's situation indicate his right of access to the courts was not violated. Specific resources, such as an adequate law library, constitute only "one constitutionally acceptable method [prison administrators may employ] to assure meaningful access to the court[.]" *Bounds,*

16

430 U.S. at 830. The provision or appointment of an attorney to assist an inmate is sufficient to provide access to the courts. *Id.* at 831. "Appointed counsel, whether state or court provided, offers a meaningful, and certainly the best, avenue of access to an indigent inmate. An attorney is in a better position than the inmate or inmate writ writer to promote efficient and skillful handling of the inmate's case." *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981).

Again, with respect to his access to the courts claim, Warner refers only to the criminal proceedings pending against him while he was incarcerated at FCDC. In the context of criminal proceedings, the Sixth Amendment guarantees the right to appointment of counsel when a defendant is facing the possibility of incarceration. *Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004). Given the record in this case indicating Warner is now incarcerated at the Montana State Prison immediately following his incarceration at FCDC, it is apparent that Warner's criminal proceedings he references in his pleading exposed him to the possibility of incarceration and entitled him to appointment of counsel in his criminal case. If so, then that appointment of counsel would satisfy the constitutional right of access to the courts to which Warner was entitled with respect to his criminal case while incarcerated at FCDC.

In view of Warner's pro se status, the Court will afford him an opportunity

17

to amend his access to the court claims. In doing so he must present facts stating

whether he was or was not represented by an attorney in his criminal proceedings,

he must identify an actual injury he suffered in his criminal case caused by alleged

inadequate legal resources at FCDC, and he must identify specific acts or

omissions of a specific individual Defendant or Defendants which violated his

right of access to the courts.

G.    Punitive Isolation

Warner states he was placed in isolation – in a cell by himself – for punitive

and punishment reasons without due process of law as guaranteed to him under the

United States Constitution. He alleges Defendants Schuelen and Root were directly

involved in those incidents of his placement in isolation. He also alleges Defendant

Curry was "responsible" for those matters.

In general terms, with respect to a pretrial detainee's rights under the

Fourteenth Amendment, the import of the Due Process Clause of the Amendment

means that "pretrial detainees (unlike convicted prisoners) cannot be punished at

all[.]" *Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466, 2475 (2015).

> In evaluating the constitutionality of conditions or restrictions of pretrial
> detention that implicate only the protection against deprivation of liberty
> without due process of law, we think that the proper inquiry is whether those
> conditions amount to punishment of the detainee.

*Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

In assessing the constitutionality of conditions of confinement for pretrial detainees, the courts consider whether the conditions amount to punishment, or whether they are a mere incident of some legitimate governmental purpose, i.e. an inherent discomfort of confinement. *Doe v. Kelly*, 878 F.3d 710, 714 (9th Cir. 2017). A condition of incarceration will not constitute punishment if it was "reasonably related to a legitimate governmental objective." *Id.* at 720. But if a condition is arbitrary or purposeless, "a court permissibly may infer that the purpose of the government action is punishment that may not constitutionally be inflicted on detainees." *Id.*

A pretrial detainee's claim as to conditions of confinement need only demonstrate a defendant's act or omission was objectively unreasonable. *Kingsley*, 135 S. Ct. at 2473. A pretrial detainee need only identify objective facts which indicate a "challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that [objective]." *Id.* at 2473-74.

Warner expressly alleges Defendants Schuelen and Root engaged in processes to place him in isolation as a means of punishment. Consequently, Schuelen and Root will be directed to respond to Warner's allegations.

With respect to Curry, although Warner contends he is responsible for the punitive isolation, he alleges no facts demonstrating Curry's direct and personal involvement with, or causal connection to, the incidents of isolation. Warner does not plead any facts which satisfy the legal standards discussed above to impose liability upon Curry for the incidents of isolation and the claims against Curry should be dismissed.

H.    Mail and Publications

Warner alleges that while he was at FCDC he was denied his mail on several occasions, and he also complains that the FCDC facility imposed a blanket ban on his receipt of publications.

Incarcerated individuals have "a First Amendment right to send and receive mail[,]" subject to reasonable regulations reasonably related to legitimate penological interests. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Additionally, "publishers and inmates have a First Amendment interest in communicating with each other[,]" subject to reasonable prison regulations. *Hrdlicka v. Reniff*, 631 F.3d 1044, 1049 (9th Cir. 2011).

Under the circumstances, Warner's allegations sufficiently invoke his rights under the First Amendment. But he alleges only that Defendants Root and Curry were made aware of the circumstances. Warner does not identify any specific

20

individual Defendant or Defendants' conduct that was directly involved in refusing to give Warner his mail and publications. A Defendant's mere awareness of circumstances does not equate to active personal and direct involvement with the cause of the circumstances. In view of his pro se status the Court will afford Warner an opportunity to amend his allegations to identify specific acts or omissions of any Defendant which prevented Warner from receiving his mail and publications.

I.   Searches and Seizures

1.   Fourth Amendment Search

Warner alleges he was subjected to unconstitutional searches and shakedowns at FCDC. He alleges only that Defendants Schuelen, Root and Curry were made aware of the incidents.

Incarcerated individuals have no absolute right to privacy in their jail cells that is protected under the Fourth Amendment, and the Fourth Amendment proscription against unreasonable searches does not apply in a prison cell. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Even pretrial detainees have no particular Fourth Amendment right relative to a cell search. *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996). Nonetheless, a cell search is subject to standards of reasonableness, and a search must be reasonably related to legitimate penological

21

interests. *Thompson v. Souza*, 111 F.3d 694, 699 (9th Cir. 1997). *See also Walker v. Sumner*, 917 F.2d 382, 386-88 (9th Cir. 1990).

The United States Supreme Court has found that a search of living areas where pretrial detainees were held did not violate a pretrial detainee's diminished expectation of privacy. *Bell v. Wolfish*, 441 U.S. 520, 556 (1979). The searches represented a reasonable tool to serve the legitimate purpose of maintaining security. *Id.*

Under the circumstances of Warner's allegations, the Court finds he has failed to state a claim upon which relief could be granted. The cell searches do not violate an expectation of privacy that he could reasonably hold as a pretrial detainee. And jail facilities have legitimate interests in safety and security of both the facility and those individuals working and housed in it. Finally, Warner has not pled additional facts which suggest it is plausible the searches were not reasonable or were not reasonably related to the facility's legitimate security interests. This claim should be dismissed.

### 2. Due Process

Warner alleges that during the shakedowns the guards took copies of his "legal materials" and gave them to the "deputy attorney." Although the allegations implicate his due process rights, they fail to state a claim for relief.

22

The Due Process Clause of the Fourteenth Amendment to the United States
Constitution provides that a state shall not "deprive any person of life, liberty, or
property, without due process of law[.]" U.S. Const. Amend. XIV, § 1. The
threshold consideration is whether the plaintiff has been deprived of a protected
interest in property or liberty, and then the court must consider whether the
procedures the State provided comported with due process. *American
Manufacturers Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). Fundamentally,
due process requires "some kind of notice" and "some kind of hearing" before the
State can deprive a person of life, liberty, or property. *Zinermon v. Burch*, 494 U.S.
113, 127-28 (1990).

But not all procedural due process claims can be brought in federal court.
Specifically, a procedurally unauthorized deprivation of liberty or property "by a
state employee does not constitute a violation of the procedural requirements of the
Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation
remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).
"[W]hen deprivations of property [or liberty] are effected through random and
unauthorized conduct of a state employee, predeprivation procedures are simply
'impracticable' since the state cannot know when such deprivations will occur."

23

*Hudson*, 468 U.S. at 533.[1] It makes no difference whether the individual state actor could foresee that a deprivation will occur and, therefore, could have afforded the plaintiff with predeprivation procedures. *Hudson*, 468 U.S. at 534. What is significant is that the State "cannot possibly know in advance of" an unauthorized deprivation of liberty or property. "The controlling inquiry is solely whether the state is in a position to provide for predeprivation process." *Id. Zimmerman v. City of Oakland*, 255 F.3d 734, 739 (9th Cir. 2001).

Warner's allegations of the guards' conduct in taking copies of his legal materials indicate that the conduct was random and unauthorized, and the governmental authorities were not in a position to provide a predeprivation process. And Warner has available to him subsequent remedies provided under Montana law for the guards' deprivation of his private property. Thus, the claim is not viable in federal court and should be dismissed.

---

[1]The rule regarding the adequacy of postdeprivation remedies to redress procedural due process violations applies to deprivations of both liberty and property. *Zinermon v. Burch*, 494 U.S. 113, 131-32 (1990).

III.   Conclusion

A.   Claims Recommended for Dismissal

Based upon the foregoing, IT IS RECOMMENDED that the following

claims pled by Warner should be DISMISSED:

> 1.   Warner's medical care claims regarding his hip, neck, and back injuries and associated pain to the extent those claims are pled against Bowen, Root, and Curry;
>
> 2.   Warner's claims regarding his "punitive isolation" to the extent the claims are pled against Curry; and
>
> 3.   Warner's claims regarding searches, shakedowns, seizures, and confiscation of his "legal materials."

**NOTICE OF RIGHT TO OBJECT TO FINDINGS &
RECOMMENDATIONS AND CONSEQUENCES OF
FAILURE TO OBJECT**

Warner may file objections to these Findings and Recommendations within

fourteen (14) days after service (mailing) hereof.[1] 28 U.S.C. § 636. Failure to

---

[1]Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Warner is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.

timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This recommendation is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a), should not be filed until entry of the District Court's final judgment.

B.    Claims to be Amended

With the exception of the claims recommended for dismissal and the claims identified for service on specific Defendants, the balance of Warner's allegations against the remaining Defendants are deficient as pled, and they fail to state claims for relief under section 1983 because he either has not set forth sufficient facts (1) to establish liability under the elements of the various claims as described above, or (2) to identify specific personal and direct acts or omissions of specific individuals who caused a particular violation of Warner's rights.

But in view of Warner's pro se status, the Court will afford him an opportunity to file an amended complaint as to particular claims. The claims Warner may amend to cure deficiencies are as follows:

1.    Warner's medical care claims regarding his eye treatment to the extent those claims are pled against Dusing, Bowen, Root, and Curry;

26

2.      Warner's claims alleging his right of access to the courts was violated by unspecified acts or omissions of unspecified Defendants;

3.      Warner's claims alleging he was deprived of his mail and publications by unspecified acts or omissions of unspecified Defendants.

In drafting his amended complaint Warner must keep in mind that Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Lengthy, detailed and "[s]pecific facts are not necessary; the statement need only [...] give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotations and citations omitted).

Although the rules require only a short and plain statement, to establish liability for violations of a plaintiff's civil rights committed by a person acting under color of state law, the plaintiff must still set forth certain basic facts demonstrating how each defendant caused or personally participated in causing a deprivation of the plaintiff's protected rights. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Thus, in any complaint the plaintiff need only write short, plain statements which concisely describe: (1) the federal or constitutional right plaintiff believes was violated; (2) the name of the defendant(s) who violated the right; (3) exactly what each defendant did or failed to do; (4) how the action or inaction of

that defendant is connected to the violation of plaintiff's federal or constitutional right; and (5) what injury plaintiff suffered because of that defendant's conduct.

Therefore, IT IS ORDERED that on or before **March 7, 2018,** Warner shall file an amended complaint to cure the deficiencies identified in this order.   The Clerk of Court is directed to provide him with a form for filing an amended complaint. Pursuant to Fed. R. Civ. P. 8(a), Warner's amended complaint shall set forth a short and plain statement of his claims against each individual defendant showing that he is entitled to relief.

Warner's amended pleading must restate and set forth all of his claims he intends to plead against Defendants. An amended complaint supersedes the prior complaint and must be complete in itself, without incorporating by reference any prior or superseded pleading. *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); *Snyder v. HSBC Bank, USA, N.A.*, 873 F. Supp. 2d 1139, 1155 (D. Ariz. 2012).

Warner is cautioned, however, that if he fails to file an amended complaint the Court will recommend that the claims identified for dismissal will be dismissed for the reasons stated in this Order.

28

C.     Claims to be Served on Specific Defendants for their Response

Based on the viable claims identified above, the Court will order certain

Defendants to file a response to specific claims. The specific claims to which

certain Defendants must respond are as follows:

> 1.     Defendant Dusing shall respond to Warner's medical care
> claims regarding his hip, neck, and back injuries and associated pain;
>
> 2.     Defendants CBM Managed Services, Root and Curry shall
> respond to Warner's claims alleging they violated his right to
> adequate nutrition to maintain health; and
>
> 3.     Defendants Schuelen and Root shall respond to Warner's
> claims alleging they imposed "punitive isolation" against him as
> punishment.

Pursuant to Fed. R. Civ. P. 4(d), the Court will request Defendants Dusing,

CBM Managed Services, Root, Schuelen, and Curry to waive service of the

summons and Warner's Complaint as to the specific claims identified for their

response by executing, or having counsel execute, the Waiver of Service of

Summons. The Waiver must be returned to the Court within thirty (30) days of the

entry date of this Order as reflected on the Notice of Electronic Filing. If

Defendants choose to return the Waiver of Service of Summons, their answer or

appropriate motion will be due within 60 days of the entry date of this Order as

reflected on the Notice of Electronic Filing, pursuant to Fed. R. Civ. P.

12(a)(1)(B). *See also* 42 U.S.C. § 1997e(g)(2).

The Clerk of Court shall forward the documents listed below to Defendants

Dusing, CBM Managed Services, Root, Schuelen, and Curry:

* Complaint (Doc. 2);

* this Order,

* a Notice of Lawsuit & Request to Waive Service of Summons; and

* a Waiver of Service of Summons

The Clerk of Court is directed to forward the documents to the following:

Chuck Curry
920 South Main Street, Suite 100
Kalispell, Montana 59901

Jennifer Root
Flathead County Detention Center
920 South Main Street
Kalispell, Montana 59901

James Dusing
Flathead County Detention Center
920 South Main Street
Kalispell, Montana 59901

Sgt. Schuelen
Flathead County Detention Center
920 South Main Street
Kalispell, Montana 59901

CBM Managed Services
500 East 52nd Street North
Sioux Falls, SD 57104

The Clerk of Court is further directed to forward a copy of this Order to the following:

Ed Corrigan
820 S. Main Street
Kalispell, Montana 59901

Counsel for each Defendant must file a "Notice of Appearance" as a separate document at the time an Answer or Rule 12 motion is filed. *See* D. Mont. L.R. 12.2.

Any party's request that the Court grant relief, make a ruling, or take an action of any kind must be in the form of a motion, with an appropriate caption designating the name of the motion, served on all parties to the litigation, pursuant to Federal Rules of Civil Procedure 7, 10, and 11. If a party wishes to give the Court information, such information must be presented in the form of a notice. The Court will not consider requests made or information presented in letter form.

Pursuant to Fed. R. Civ. P. 5(d)(1), all documents presented for the Court's consideration must be simultaneously served by first-class mail upon the opposing party or their counsel if the party is represented. Each party shall sign and attach a proper certificate of service to each document filed with the Court. The Certificate

31

of Service must state the date on which the document was deposited in the mail and the name and address of the person to whom the document was sent. The sender must sign the certificate of service.

Warner shall not make any motion for default until at least seventy (70) days after the date of this Order.

Pursuant to Local Rule 26.1(d), no party may begin discovery until a Scheduling Order has been issued.

At all times during the pendency of this action, Warner shall immediately advise the Court of any change of address and its effective date. Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS." Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed. R. Civ. P. 41(b), or for failure to state a claim for relief.

Warner is advised that his failure to prosecute this action, to comply with the Court's orders, or to comply with the Federal Rules of Civil Procedure may also result in a recommendation that this case be dismissed with prejudice pursuant to Fed. R. Civ. P. 41(b). The Court may dismiss this case under Rule 41(b) *sua sponte* under certain circumstances. *See, e.g., Link v. Wabash Railroad Co.*, 370 U.S. 626, 633 (1962); *Hells Canyon Preservation Council v. United States Forest Serv.*, 403

F.3d 683, 689 (9th Cir. 2005).

DATED this 7th day of February, 2018.

Jeremiah C. Lynch
United States Magistrate Judge