IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| DANNY LEE WARNER, JR., | CV 17-104-M-DLC-JCL |
| Plaintiff, |  |
| vs. | FINDINGS AND RECOMMNEDATION |
| CHUCK CURRY, JENNIFER ROOT, JAMES DUSING, TAMMY BOWEN, SGT. SCHUELEN, and CBM MANAGED SERVICES, |  |
| Defendants. |  |

Before the Court are Defendants Chuck Curry, Jennifer Root, Sgt. Schuelen, James Dusing, and CBM Managed Services' separate Fed. R. Civ. P. 56 motions for summary judgment. For the reasons discussed, the Court recommends Curry, Root, and CBM Managed Services' motions be granted as to Plaintiff Danny Warner's claims for inadequate food and nutrition. And the Court recommends Dusing's motion be denied, and that Root and Schuelen's motion be denied with respect to Plaintiff Danny Warner's claim of unlawful punishment.

## I.   **Background**

Plaintiff Danny Warner, appearing pro se, was incarcerated at the Flathead County Detention Center ("FCDC") in Kalispell, Montana in 2016 and 2017.

Defendant Chuck Curry was the Sheriff of Flathead County, and Defendants Jennifer Root and Sgt. Schuelen were officers employed to work at FCDC. Defendant James Dusing is a physician who was contracted to provide medical services for inmates at the facility, and Defendant CBM Managed Services was contracted to provide food to inmates.

On November 23, 2016, law enforcement officers arrested Warner and placed him in custody at FCDC. He was held in custody awaiting resolution of pending criminal charges.

When Warner arrived at FCDC he had neck, back and hip injuries. Warner complains that Dusing failed to provide adequate medical care for his injuries as required under the Fourteenth Amendment to the United States Constitution.

Next, Warner asserts the food he received at FCDC caused him health problems for him. Specifically, he claims he suffered from Celiac disease and needed a gluten-free diet. He states he did not always receive a gluten-free meal when he was at FCDC, and that the meals he did receive were not nutritionally adequate. Warner alleges CBM Managed Services, Root and Curry were all aware of the food problems, but they were deliberately indifferent to his health.

Finally, Warner alleges Schuelen and Root placed him in punitive isolation several times without due process of law. He asserts the incidents constituted unlawful punishment imposed against him as a pretrial detainee.

2

Warner's claims are advanced under authority of 42 U.S.C. § 1983, thereby invoking the federal question jurisdiction of this Court pursuant to 28 U.S.C. § 1331.

## II.   **Applicable Law – Summary Judgment Standards**

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986). Once the moving party has satisfied his burden, he is entitled to summary judgment if the non-moving party fails to designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). Finally, in deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

Also, because Warner is proceeding pro se the Court must construe his documents liberally and give them "the benefit of any doubt" with respect to

Defendants' summary judgment motions. *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999). *See also Erickson v. Pardus* 551 U.S. 89, 94 (2007).

## III. Discussion

### A. Warner's Verified Complaint and Sworn Brief

In response to Defendants' summary judgment motions, Warner relies upon facts set forth in his complaint. He signed a verification on his complaint in which he affirmatively stated, "under penalty of perjury that the foregoing is true and correct." (Doc. 2 at 8.)

The Court finds Warner's verification satisfies the requirements for a valid, unsworn declaration set forth in 28 U.S.C. § 1746. *See Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995). Thus, the verified complaint constitutes an affidavit, and the Court must consider appropriate facts therein to the extent the facts are admissible and asserted upon Warner's personal knowledge, as opposed to his mere information and belief. *Id*. at 460; *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Warner also signed a similar oath in his brief that he filed in opposition to Defendants' summary judgment motions. He states "[h]aving been duly sworn upon my oath I Danny Lee Warner Jr do declare that the foregoing is true to the best of my knowledge and correct to the best of my ability." (Doc. 77 at 10.) And his signature is "subscribed and sworn to" before a notary. (*Id.*) Thus, Warner's

brief qualifies as an affidavit, and the Court will consider the factual matters asserted therein to the extent they are admissible and within his personal knowledge. *See United States v. Yoshida*, 727 F.2d 822, 823 (9th Cir. 1983) (identifying elements of a valid affidavit), and *Cord v. Smith*, 370 F.2d 418, 420 n.1 (9th Cir. 1966) (requiring that affidavit must be sworn to before a notary).

## B. Dusing – Medical Care – Fourteenth Amendment Standards

Warner was incarcerated at FCDC as a pretrial detainee at the time Dusing provided medical treatment to him. Thus, Warner's rights relative to conditions of his confinement and medical care are addressed under the due process clause of the Fourteenth Amendment to the United States Constitution. *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003).

Historically, a pretrial detainee's claim challenging an adverse condition of his confinement under the Fourteenth Amendment was governed by the analysis under the Eighth Amendment applicable to a comparable claim brought by a convicted inmate. *See Gordon v. County of Orange*, 888 F.3d 1118, 1122 (9th Cir. 2018). Consequently, a pretrial detainee was required to establish that a defendant acted with a sufficiently culpable state of mind which was analyzed under a subjective deliberate indifference standard. *Id*. A pretrial detainee had to establish the defendant acted with an actual, subjective awareness of a particular risk of harm to the detainee, and knowingly disregarded the risk. *Id*. at 1123 n.1.

But in 2015, the Supreme Court's decision in *Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466 (2015) changed the calculus of the analysis applicable to a pretrial detainee's claims under the Fourteenth Amendment. In *Kingsley*, the Supreme Court concluded that the Eighth Amendment's subjective standard is not applicable to a pretrial detainee's claim for excessive force under the Fourteenth Amendment. *Kingsley*, 135 S. Ct. at 2472-73. Instead, the courts must analyze the defendant's conduct under an objective standard and consider whether a defendant's acts or omissions were objectively unreasonable in view of all the facts and circumstances of the particular situation. *Id*. at 2473.

The Ninth Circuit applies *Kingsley*'s objective standard to a pretrial detainee's claims. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). And in *Gordon*, the Ninth Circuit established the necessary elements of a pretrial detainee's claim asserting he was not provided adequate medical care. The detainee must demonstrate that:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon*, at 1125. The third element requires that the evidence demonstrate defendant's conduct was objectively unreasonable under all the facts and circumstances. *Gordon*, at 1125. The standard requires a plaintiff to "prove more than negligence but less than subjective intent – something akin to reckless disregard." *Id.* (citation and quotation omitted).

Warner's verified complaint provides necessary facts relevant to Dusing's summary judgment motion. Warner states he had injuries to his neck, back and hip when he arrived at FCDC November 23, 2016, and he informed Dusing of his injuries and pain. Warner states he was in "a tremendous amount of pain[.]" (Doc. 2 at ¶ 14; Doc. 64-1 at 4 of 7.)

Prior to his incarceration at FCDC Warner had been prescribed Gabapentin and Tramadol for his injuries. (Doc. 2 at ¶¶ 12-13.) Dusing did not continue Warner on those medications, and instead he prescribed a muscle relaxer which Warner states exacerbated his condition and his pain. (Doc. 2 at ¶¶ 13-15.) It was not until May 12, 2017, that Dusing eventually prescribed Tramadol for Warner. (Doc. 77 at 11.) But shortly thereafter Dusing reduced Warner's dosage of Tramadol, and as a result he was again in pain. (Doc. 2 at ¶ 21.)

Dusing filed his affidavit in support of his summary judgment motion in which he authenticates Warner's medical records reflecting treatment Dusing provided to Warner. Dusing's affidavit, however, states only that "true and

accurate copies of the medical records reflecting the services I provided to Danny Lee Warner, Jr." are attached to the affidavit. (Doc. 63 at ¶ 4.) Dusing does not provide any substantive facts in his affidavit in support of his summary judgment motion.

The first medical record attached to Dusing's affidavit reflects that on December 12, 2016, Dusing saw Warner regarding his back pain. (Doc. 63-1 at 1.) Although not clearly stated in the medical records, Dusing's unsworn Statement of Undisputed Facts represents that the medical records show he treated Warner's back pain by prescribing "the pain killer Gabapentin," and the muscle relaxer Methocarbamol, or Robaxin. (Doc. 66 at ¶ 2.) Although the medical records are somewhat illegible, Gabapentin and Robaxin appear to be written and prescribed on page 2 of the December 12, 2016 medical records. But that medical record itself does not expressly establish that Gabapentin was prescribed as a "pain killer", and it does not establish that Robaxin was prescribed as a "muscle relaxer." (Doc. 63-1 at 2). And Dusing does not explain either the drugs or his treatment in his affidavit.

The next medical record attached to Dusing's affidavit is not dated, but reflects that Dusing saw Warner for his hip pain. (Doc. 63-1 at 3.) But Dusing does not explain the evidentiary value of that particular medical record relative to Warner's claim.

The last medical record attached to Dusing's affidavit is dated March 20, 2017, and it reflects he saw Warner regarding a bowel problem. (Doc. 63-1 at 5.) Dusing's unsworn Statement of Undisputed Facts represents the medical record shows he prescribed Warner a steroid, Medrol Dosepak. (Doc. 66 at ¶ 2.) Although it appears Medrol Dosepak is written and prescribed on page 2 of the medical record, the record does not establish that the prescription was for Warner's neck, back or hip pain because the medical record instead references a bowel problem. (Doc. 63-1 at 6.) Dusing does not explain the probative value of this record.

As noted, on May 12, 2017, Dusing prescribed Tramadol for Warner. Warner asserts that until that time Dusing had disregarded his complaints of pain for approximately five months. (Doc. 2 at ¶ 20.)

Shortly after Dusing prescribed Tramadol, Warner was transferred from FCDC to the Montana State Hospital in Warm Springs, Montana. A psychiatrist at the hospital opined that Warner's aggressive behavior was due, in part, to the Tramadol, and the psychiatrist reduced Warner's Tramadol dosage. (Doc. 64-1 at 4 of 7 & 6 of 7.)

The parties apparently agree that when Warner returned to FCDC from the State Hospital, his Tramadol dosage was reduced as recommended by the psychiatrist at the State Hospital. But the record does not affirmatively establish who made the decision to follow the psychiatrist's recommendation. Nevertheless,

9

by at least September, 2017, Dusing increased Warner's Tramadol dosage. (Doc. 90-5 at ¶ 9; Doc. 65-1 at 4 of 4.)

Dusing argues that the foregoing evidence in the record does not support Warner's claim that Dusing failed to provide proper medical care as required by the Fourteenth Amendment. He argues the record reflects Warner saw "Dusing several times for his condition and received medication for his pain throughout his incarceration at FCDC." (Doc. 62 at 7.) But the medical records, by themselves, do not affirmatively support and establish as undisputed this factual assertion made only in Dusing's brief.

As the party moving for summary judgment, Dusing bears the burden of establishing the facts which support the motion.

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Even though a defendant does not bear the ultimate burden of persuasion at trial relative to a plaintiff's claims, a defendant moving for summary judgment still bears the initial burden of production and the ultimate burden of persuasion on a summary judgment motion. *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Specifically, a defendant must produce evidence which either: (1)

negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial. *Id*. And the moving party must persuade the court that no genuine issue of material fact exists. *Id*. If the moving party fails to carry its initial summary judgment burden, then the motion is subject to denial regardless of the non-moving party's response. *Id*. at 1103.

The Court finds Dusing has failed to meet his summary judgment burden as required. The record reflects Warner was in "tremendous pain" as a result of neck, back and hip injuries upon his arrival at FCDC on November 23, 2016. The three medical records Dusing filed reflect only the treatment he provided on three limited occasions, and they do not affirmatively establish that Dusing provided objectively reasonable treatment for Warner's injuries. Although Dusing apparently provided Warner with Gabapentin and Robaxin on December 12, 2016, Dusing did not affirmatively establish, through admissible evidence, the purpose of those medications. Warner stated in his deposition that the medication only addressed his neck pain, not his hip or lower back pain. (Doc. 64-1- at 4 of 7.) And again, Warner asserts the Robaxin only exacerbated his pain.

Furthermore, although on March 20, 2017, Dusing provided Warner with Medrol Dosepak, the medical record establishes Dusing was treating Warner for a bowel problem, not his painful injuries.

Finally, although Dusing later provided Warner with Tramadol which apparently relieved Warner's pain, that did not occur until May 12, 2017.

Absent further explanation and medical testimony from Dusing, the Court finds he has failed to meet his initial summary judgment burden of affirmatively establishing the absence of a genuine issue of material on the issue of whether the medical care he provided was objectively reasonable in view of Warner's injuries and pain, and that his conduct was not something akin to reckless disregard. On the unexplained record as presented by Dusing, the Court cannot conclude he is entitled to judgment as a matter of law.

### C. **CBM Managed Services, Curry and Root – Food and Nutrition**

Warner complains that the gluten-free meals he received while at FCDC were not nutritionally adequate. He asserts the meals did not conform to the dietician-approved menus, the food portions were too small, and the protein content was too low. Some food he received contained gluten, and some food was rotten and uncooked. He complains he was not given fresh fruit and vegetables, and that the bread was "unhealthy."

Warner asserts he experienced various medical problems as a result of the food provided at FCDC. He experienced vitamin deficiencies, weight loss, constipation, severe cramps, stomach problems, irregular bowel movements, and pain which required that he receive an expensive CT scan of his abdomen.

Warner asserts Defendants CBM Managed Services, Root and Curry were "all aware that meals at FCDC [were] nutritionally inadequate." (Doc. 2 at ¶ 30.) And he alleges they each were deliberately indifferent to his health.

Federal law provides that when a person is taken into custody and held as a pretrial detainee, the government "must provide for the person's 'basic human needs – e.g. food, clothing, shelter, medical care, and reasonable safety.'" *Doe v. Kelly*, 878 F.3d 710, 714 (9th Cir. 2017). Food is one of life's basic necessities protected by the Eighth Amendment. *Foster v. Runnels*, 554 F.3d 807, 812-13 (9th Cir. 2009), and *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996).

The Eighth Amendment "requires only that prisoners receive food that is adequate to maintain health." *Foster*, 554 F.3d at 813 n.2. But where an inmate alleges he has suffered physical manifestations as a result of inadequate nutrition, such allegations are sufficient to state a cognizable claim – they indicate the deprivation is objectively sufficiently serious. *Id*.

As discussed relative to Warner's medical care claims against Dusing, the Ninth Circuit has refined the specific elements of a pretrial detainee's claim under the Fourteenth Amendment asserting that a particular governmental action imposed adverse conditions of confinement in violation of the detainee's constitutional rights. The Ninth Circuit has strongly signaled its intent to broadly apply the objective standard established in *Kingsley*, supra, to a wide variety of claims, if not

all claims brought by a pretrial detainee challenging conditions of confinement.
*See Gordon v. County of Orange*, 888 F.3d 1118, 1124 n.2 (9th Cir. 2018).
Therefore, the Court will apply the same four elements of a Fourteenth
Amendment claim established in *Gordon*, supra, to Warner's claim asserting CBM
Managed Services, Root and Curry deprived him of adequate nutrition. *See
Williams v. Las Vegas Metropolitan Police Department*, 2019 WL 346400, *3 (D.
Nev. 2019) (applying the objective standard and the elements discussed in *Gordon*
to a pretrial detainee's claim alleging jail staff deprived him of adequate food).
Consequently, Warner must establish each Defendants' acts or omissions were
objectively unreasonable.

The objective standard requires consideration of the reasonableness of a
defendant's conduct evaluated under an "objective deliberate indifference
standard." *Gordon*, 888 F.3d at 1125. The evidence must demonstrate the
defendant made an intentional decision relative to a pretrial detainee in a situation
where a reasonable person "would have appreciated the high degree of risk" of
"serious harm" that the decision posed to the detainee, and that the "defendant did
not take reasonable available measures to abate that risk[.]" *Id*.

### 1.  CBM Managed Services

In its summary judgment motion CBM Managed Services admits the truth of
Warner's factual allegations as to the food Warner received at FCDC, and it does

not dispute the specific instances about which Warner complained at FCDC. (Doc.

59 at 2 & 9.) Thus, it recognizes Warner has Celiac disease and he required a

gluten-free diet when he was at FCDC. CBM Managed Services agrees that

following Warner's incarceration on November 23, 2016, Warner did not receive a

gluten-free meal until January 3, 2017. (Doc. 59-4 at ¶ 4 (citing doc. 2-1 at 84 of

172).) It also agrees that at times portions of Warner's meals were missing, he

received uncooked food, and it did not provide "fresh" fruit or vegetables. (Doc.

59-4 at 2.) It does not dispute that at times his food portions were too small, the

protein content was too low, and the bread was sometimes unhealthy. (Doc. 59 at

9.)

Nonetheless, CBM Managed Services asserts it cannot be held liable under

the Fourteenth Amendment on the basis that it did not act with the requisite

culpable state of mind to harm Warner. The Court agrees CBM Managed Services

has established the evidence demonstrates its specific conduct in response to

Warner's complaints was objectively reasonable.

In support of its summary judgment motion, CBM Managed Services relies,

in part, upon 23 requests for admission that it sent to Warner on September 5,

2018, pursuant to Fed. R. Civ. P. 36. It asserts Warner did not respond to the

requests and, therefore, it argues the requests are deemed admitted by operation of

Fed. R. Civ. P. 36(a)(3).

In response, Warner asserts he never received CBM Managed Services' requests for admission. (Doc. 98 at 1.) And now that he has seen the substance of the requests for admission in CBM Managed Services' summary judgment motion, he affirmatively denies each of the 23 requests for admission.

In view of Warner's status as an incarcerated pro se litigant, the Court will accept his statement that he did not receive the requests for admission. Consequently, the Court will not deem the matters admitted.

Despite the exclusion of the requests for admission, CBM Managed Services has cited to evidence in the record that affirmatively establishes it acted reasonably in response to Warner's complaints about the deficiencies in the food that he perceived. CBM Managed Services submitted an affidavit from its employee, Jacqualyn Kjensrud, who was responsible for preparing and serving the meals for the inmates at FCDC when Warner was incarcerated there. Kjensrud confirms Warner received gluten-free meals. (Doc. 59-1 at ¶ 3.) She confirms that the meals and the menu cycles were pre-approved by a registered dietician licensed in the State of Montana, and the meals were prepared in accordance with the National Research Council and the American Corrections Association's Recommended Dietary Allowances to ensure the meals provided for the inmates' nutritional needs. (Doc. 59-1 at ¶¶ 4-5.)

16

Kjensrud also affirmatively asserts that CBM Managed Services remedied Warner's complaints about deficiencies in his food. (Doc. 59-1 at ¶ 9.) If Warner complained about missing food, CBM Managed Services would take the missing food to Warner. (Doc. 59-1 at ¶ 9.) When Warner informed CBM Managed Services he was allergic to mayonnaise it left mayonnaise out of his meals. (Doc. 59-1 at ¶ 10.) If Warner received moldy bread, it would replace or substitute it. (Doc. 59-1 at ¶ 11.) One time Warner received two uncooked eggs which CBM Managed Services exchanged for two hardboiled eggs when it was notified of the mistake. (Doc. 59-1 at ¶ 12.) As to other "uncooked" foods, CBM Managed Services acknowledges some recipes it served called for uncooked cabbage as coleslaw. (Doc. 59-1 at ¶ 10.) CBM Managed Services acknowledges that the fruit and vegetables were not "fresh", but only in that they were canned or frozen. (Doc. 59-1 at ¶ 13.) Although Warner complained his milk was out of date, the date on the milk carton about which Warner complained was a sell-by-date, not a date after which the milk was no longer good. (Doc. 59-1 at ¶ 16.) Finally, although Warner complained some food portions were too small, CBM Managed Services provided food portions in compliance with the menu requirements. (Doc. 59-1 at ¶ 17.)

Based on the evidence provided by CBM Managed Services, the Court finds it has met its summary judgment burden of demonstrating its objectively reasonable conduct.

17

In response, Warner maintains CBM Managed Services did not act reasonably in view of his health problems. He contends the circumstances surrounding CBM Managed Services' provision of food to him at FCDC subjected him to "serious harm", and the resulting harm was the various abdominal problems identified in his verified complaint. He asserts the problems were caused by various alleged deficiencies he identifies in the food that CBM Managed Services provided to him. (Doc. 2 at ¶ 26; Doc. 77 at ¶ 17.)

Warner argues CBM Managed Services' conduct was objectively unreasonable because a reasonable person would have appreciated the abdominal problems he was experiencing and would have taken further reasonable steps to abate that risk. Warner cites to grievances he filed which he believes would have caused CBM Managed Services to appreciate the risk of harm he faced. He suggests his grievances dated December 18, 2016, December 30, 3016, January 1, 2017, January 2, 2017, and August 20, 2017, notified CBM Managed Services of problems he was experiencing with his food. (Doc. 77-1 at ¶ 23; Doc. 77 at 27-32 of 42.) But the Court finds those grievances identified only what Warner perceived as deficiencies in the food and nutrition provided to him. The grievances do not present any information as to the resulting health problems Warner may have been experiencing. Thus, the grievances do not constitute evidence of a substantial risk of serious harm that CBM Managed Services should reasonably have appreciated

18

and abated.

Other than the referenced grievances, Warner does not cite to any other evidentiary material suggesting that CBM Managed Services reasonably should have been aware of Warner's health problems and the asserted resulting need for changes to the food that it provided to Warner to abate the health problems. Absent evidence indicating CBM Managed Services should have been aware of Warner's health problems, there exists no evidence on which a reasonable jury could find that a reasonable person in CBM Managed Service's position would have appreciated a high degree of risk to Warner's health as a result of food it was providing to him. There exists no evidence suggesting CBM Managed Services acted objectively unreasonable with a reckless disregard to the harms and health problems Warner asserts he was experiencing. Thus, Warner has failed to identify evidentiary materials which raise a genuine issue of fact as to CBM managed Services' objectively reasonable conduct.

### 2. **Curry and Root**

Defendants Curry and Root similarly move for summary judgment asserting they cannot be held liable under the Fourteenth Amendment. They argue they only had limited knowledge of Warner's complaints about the food he received, that their involvement was limited to their review of Warner's grievances, and the evidence establishes they did not act with the requisite culpable state of mind

towards Warner relative to his food and nutrition complaints. For the reasons discussed, the Court agrees.

Warner contends Defendants "Curry and Root were well aware of the problems that existed with Plaintiff's nutritional needs[.]" (Doc. 77 at ¶ 25.) But the record in this case does not support Warner's contention.

The record indicates Warner did not initially advise Curry or Root of his nutritional concerns or his need for a gluten-free diet. Warner's verified complaint establishes he told "FCDC Officers on admission and Defendant Bowen on November 28, 2016, that he has Celiac disease requiring a gluten-free diet." (Doc. 2 at ¶ 24.) But Warner's verified complaint does not assert he told Curry or Root of his need. And as represented by Warner, the record reflects that the first grievance he filed about his need for a gluten free diet was filed on January 2, 2017, and the response written on that grievance states that Warner's diet was changed to gluten free on January 3, 2017. (Doc. 2-1 at 84 of 172.) But again, the record does not reflect that the information was given to Curry or Root.

Warner cites to only one grievance concerning his nutritional needs which he argues indicates Curry and Root were aware of his health problems and are liable. Warner filed a grievance dated December 30, 2016, complaining about inadequate nutrition he was receiving at FCDC. (Doc. 2-1 at 101 of 172; Doc. 70-1 at 11 of 56.) In his grievance he reported that he perceived that the approved

20

menus were not followed, and that he was not receiving the proper amount of calories and protein. (*Id*.)

It appears Warner's December 30, 2016 grievance was forwarded to Root for her consideration. On December 30, 2016, Root responded to the grievance stating that she reviewed the menu and the procedures for measuring food, and found that the meals were "adequate and provide the proper amount of nutrition that is required by Flathead County Detention. The menu and diet […] is approved by a dietician." (Doc. 77-1 at 33 of 42.) Root provided Warner with a copy of the letter from CBM Managed Services' dietitian stating that the "meals are nutritionally adequate." (*Id*.)

Warner appealed Root's response to his grievance, and Curry issued his decision on the appeal on January 13, 2017. Curry stated he reviewed the "menu and confirmed that [it] is approved by a Dietitian", and he found that substitutions to the menu items "meet the nutritional requirements." (Doc. 2-1 at 73 of 172.) That is the only evidence to which Warner cites suggesting Curry and Root were aware of his nutritional concerns. (*See* doc. 77 at ¶ 25.)

Based on the record, the Court finds Warner has not identified evidentiary materials which raise a genuine issue of material fact as to whether Curry or Root's conduct towards Warner relative to his nutritional needs was objectively unreasonable. As relied upon by Warner, Curry and Root's only involvement was

to issue their decisions following Warner's appeal of his December 30, 2016 grievance complaining about his nutrition. And those responses and decisions reflect that Curry and Root's conduct was objectively reasonable. They confirmed the dietitian's approval of the menus, and found the food met nutritional requirements. The evidence to which Warner cites does not suggest circumstances existed from which Curry or Root reasonably should have appreciated a high degree of risk of serious harm to Warner. Based on that evidence, no reasonable jury could conclude that either Curry or Root responded to Warner's grievance with reckless disregard for his nutritional needs.

### D. **Root and Schuelen – Punitive Isolation**

Warner alleges he was placed in "punitive isolation on several occasions without due process of law[,] and Defendant Schuelen has been responsible for most of these." (Doc. 2 at ¶ 34.) He asserts he was held in his cell by himself even though he had not violated any rule at FCDC. (Doc. 2 at ¶ 40.) Instead he asserts he was held in isolation in retaliation for grievances he filed at FCDC. (*Id.*) He states that during the isolation process he was not informed of any rule violation, was not allowed to speak, and was not afforded a hearing. (Doc. 2 at ¶ 34.) He complains the circumstances constituted "arbitrary punishment" which he asserts is illegal for a pretrial detainee. (*Id.*)

22

In one isolation incident Warner was afforded a hearing, but Defendant Root did not allow Warner to call witnesses. And Warner did not receive a written report until 4 weeks after the hearing contrary to policy requirements. Warner asserts he continued to be "punished" during the time he was waiting for the report, and he asserts Defendant Root is directly responsible for those events. (Doc. 2 at ¶ 35.)

In general terms, with respect to a pretrial detainee's rights under the Fourteenth Amendment, the import of the Due Process Clause of the Amendment means that "pretrial detainees (unlike convicted prisoners) cannot be punished at all[.]" *Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466, 2475 (2015).

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.

*Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

In assessing the constitutionality of conditions of confinement for pretrial detainees, the courts consider whether the conditions amount to punishment, or whether they are a mere incident of some legitimate governmental purpose, i.e. an inherent discomfort of confinement. *Doe v. Kelly*, 878 F.3d 710, 714 (9th Cir. 2017). A condition of incarceration will not constitute punishment if it was "reasonably related to a legitimate governmental objective." *Id*. at 720. But if a condition is arbitrary or purposeless, "a court permissibly may infer that the

purpose of the government action is punishment that may not constitutionally be inflicted on detainees." *Id*; and *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

A pretrial detainee's claim as to conditions of confinement need only demonstrate a defendant's act or omission was objectively unreasonable. *Kingsley*, 135 S. Ct. at 2473. A pretrial detainee need only identify objective facts which indicate a "challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that [objective]." *Id*. at 2473-74.

Indeed, the objective deliberate indifference standard applied in *Gordon v. County of Orange*, 888 F.3d 1118 (9th Cir. 2018), supra, also applies to a pretrial detainee's allegations asserting that conditions of the detainee's confinement amount to unlawful punishment imposed against the detainee. *See Gladden v. County of Riverside*, 2018 WL 4042788, *5-6 (C.D. Cal. 2018). The first element of a pretrial detainee's claim identified in *Gordon* requires that a defendant must have acted subjectively by knowingly and purposefully placing a detainee in certain conditions of confinement, but the third element – the reasonableness of the defendant's conduct in abating a risk – is analyzed under an objective standard. *Gladden*, at *5.

Despite the extent of Warner's allegations presented in his verified complaint regarding circumstances of isolation imposed against him as

punishment, Defendants Root and Schuelen present a very limited argument in support of their motion for summary judgment in only one paragraph in their brief. (Doc. 69 at 6-7.) They state the Schuelen locked Warner down for four hours on March 14, 2017, and then they make a conclusory assertion that the lockdown did not amount to punishment. (Doc. 69 at 6.) Their brief asserts Schuelen "believed the lockdown was warranted", and they cite to two pages of documents identified as "FC 036-37" supporting Schuelen's asserted belief. (Doc. 70 at ¶ 7.)

The Court finds that the sole evidentiary material to which Root and Schuelen cite in support of their motion does not exist in the record. The Court finds there are no documents identified as FC 036-037 attached to Root and Schuelen's Statement of Undisputed Facts.

Additionally, neither Root nor Schuelen make any further argument in support of their motion for summary judgment dismissing Warner's claim of unlawful punishment. They do not cite to any other evidentiary material in support of their motion.

As the parties moving for summary judgment, Root and Schuelen bear the burden of identifying and establishing the facts which support their motion. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). To support their summary judgment motion Root and Schuelen were obligated to either (1) negate an essential element of Warner's claim, or (2) show that Warner does not have

enough evidence of an essential element to ultimately carry his burden at trial.
*Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102
(9th Cir. 2000). And Root and Schuelen bear the burden of establishing that no
genuine issue of material fact exists. *Id.*

In view of the referenced law employed to analyze a pretrial detainee's
claim of punishment, Root and Schuelen have entirely failed to identify any facts
that would establish that Warner's incidents of "punitive isolation" did not
constitute punishment, that the incidents were reasonably related to a legitimate
governmental interest, or that their actions were objectively reasonable. They have
not established the absence of a genuine issue of material fact, and they have not
established they are entitled to judgment as a matter of law. Having failed to satisfy
their initial summary judgment burden, their motion is subject to denial regardless
of Warner's response.

The Court notes that in their reply brief, Root and Schuelen devote over 3
pages of their brief raising arguments in support of their summary judgment
motion. (Doc. 85 at 6-10.) But, generally an argument or legal claim raised for the
first time in a reply brief is waived. *Friends of Yosemite Valley v. Kempthorne*, 520
F.3d 1024, 1033 (9th Cir. 2008) (addressing appellate reply brief), and *Alliance for
the Wild Rockies v. Weber*, 979 F. Supp. 2d 1118, 1126 (D. Mont. 2013)
(addressing summary judgment reply brief). Under the circumstances of this case,

given Root and Schuelen's extremely limited and unsubstantiated arguments presented in their opening brief, the Court will not consider their arguments raised for the first time in their reply brief.

Root also moves for summary judgment on the additional ground that she acted only as a supervisor relative to Schuelen's conduct in locking Warner down in isolation. A supervisor may only be held liable for his or her own direct personal involvement in unlawful conduct. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). And Root suggests there is no evidence she directly engaged in unlawful conduct.

But Warner's verified complaint asserts Root was "directly responsible" for holding him in punitive isolation when she unlawfully delayed the production of her written report, and the delay "punished" Warner. (Doc. 2 at ¶ 35.) Therefore, a genuine issue of material fact exists as to Root's direct involvement with the alleged punishment to which Warner asserts he was subjected. Her motion should be denied in this respect.

Finally, Root and Schuelen move for summary judgment on the basis that the doctrine of qualified immunity protects them against liability for any unlawful punishment Warner may have experienced. Qualified immunity renders a law enforcement officer immune from liability when the officer's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known." *White v. Pauly*, ___U.S. ___, 137 S. Ct. 548, 551 (2017) (citation and quotation omitted). "In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017) (citation and quotation omitted). "These two prongs of the analysis need not be considered in any particular order, and both prongs must be satisfied for a plaintiff to overcome a qualified immunity defense." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017).

As discussed, Root and Schuelen failed to satisfy their summary judgment burden of establishing that they did not unlawfully punish Warner as a pretrial detainee in violation of his rights under the Fourteenth Amendment. Thus, the first prong of the qualified immunity analysis does not support the grant of immunity.

Under the second prong of the qualified immunity analysis, Root and Schuelen would be entitled to immunity if their conduct towards Warner did not violate a clearly established constitutional right of which a reasonable officer would have known. *Kisela v. Hughes*, ___ U.S. ___, 138 S. Ct. 1148, 1152 (2018). The analysis focuses on whether a reasonable officer would have had fair notice, based upon the existing decisional law at the time of the officer's conduct, that the

specific conduct in which the officer engaged in response to specific circumstances was unconstitutional. *Id.*

Here, in a one-sentence argument, Schuelen asserts in his brief that he "could not have imagined he was violating a clearly established constitutional right." (Doc. 69 at 9.) Schuelen, however, makes no legal argument to suggest that the law relative to the punishment of a pretrial detainee was not clearly established by the time of his conduct in 2016 or 2017.

But with respect to the issue of punishment imposed upon a pretrial detainee, the United States Supreme Court clearly established, at least by 1979, that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 539 (1979). Pretrial detainees cannot be punished at all.[1]  *Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466, 2475 (2015). Consequently, the Court concludes that a reasonable officer in Root or Schuelen's position would have had fair notice that any conduct they commit

---

[1]The Court is cognizant of the fact that in assessing whether any particular right at issue was clearly established, the right may "not be defined at a high level of generality." *White v. Pauly*, ___U.S. ___, 137 S. Ct. 548, 552 (2017) (citation and quotation omitted). Rather, the established right "must be 'particularized' to the facts of the case." *Id.* (citation omitted). But because Root and Schuelen have not met their summary judgment burden of establishing undisputed facts in their favor, they have similarly failed to characterize the particularized right at issue based on the facts of this case. Therefore, the Court considers the clearly established law of the general right at issue – a detainee's right against punishment.

that constitutes punishment imposed upon Warner as a pretrial detainee was unconstitutional. Thus, Root and Schuelen have not established they are entitled to qualified immunity.

## IV.   **Conclusion**

Based on the foregoing, IT IS HEREBY RECOMMENDED that Curry, Root, and CBM Managed Services' motions be GRANTED as to Warner's claims for inadequate food and nutrition. IT IS FURTHER RECOMMENDED that Dusing's motion be DENIED, and that Root and Schuelen's motion be DENIED with respect to Warner's claim of unlawful punishment.

DATED this 20th day of February, 2019.

_____
Jeremiah C. Lynch
United States Magistrate Judge