IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DANNY LEE WARNER, JR., <br><br> Plaintiff, <br><br> vs. <br><br> CHUCK CURRY, JENNIFER ROOT, JAMES DUSING, TAMMY BOWEN, SGT. SCHUELEN, and CBM MANAGED SERVICES, <br><br> Defendants. | CV 17–104–M–DLC–JCL <br><br> ORDER |

United States Magistrate Judge Jeremiah C. Lynch entered his Findings and Recommendation in this § 1983 case on February 20, 2019, recommending that the Court: (1) grant the motions for summary judgment of Defendants Chuck Curry, Jennifer Root, and CBM Managed Services ("CBM") regarding Plaintiff Danny Lee Warner, Jr.'s claims for inadequate food and nutrition; (2) deny the motion for summary judgment of Defendant James Dusing, M.D.; and (3) deny the motions for summary judgment of Root and Schuelen as to Warner's claim for unlawful punishment. (Doc. 108.) Warner's claims against Defendants Curry, Root, Schuelen, and Bowen have since been dismissed with prejudice (Doc. 116), and

-1-

the Court will accordingly review only Warner's claims against Defendants CBM and Dusing in this Order.

Dr. Dusing timely filed objections to the Findings and Recommendation, and Warner replied to Dusing's objections. (Docs. 110 & 112.) Consequently, Dusing is entitled to de novo review of those findings and recommendations to which he has specifically objected. 28 U.S.C. § 636(b)(1)(C). Absent objection, this Court reviews findings and recommendations for clear error. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

## I. CBM Managed Services

Judge Lynch recommended granting summary judgment to CBM, which provided meals to Warner when he was a pretrial detainee housed at the Flathead County Detention. Because there are no objections to this portion of the Findings and Recommendation, the Court reviews for clear error. The Court finds no clear error in Judge Lynch's determination that CBM did not act with deliberate indifference to Warner's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

## II. Dusing

Because Dusing timely objected to the Findings and Recommendation, the Court reviews de novo whether he is entitled to summary judgment. The Court finds that there is no material dispute of fact and that Dusing is entitled to judgment as a matter of law. Accordingly, it will grant Dusing's motion for summary judgment and dismiss Warner's remaining claims against Dusing.

Warner alleges that Dusing violated Warner's Fourteenth Amendment due process rights by failing to adequately manage his health care during Warner's pretrial detention. "[M]edical care claims brought by pretrial detainees . . . 'arise under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause.'" *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) (quoting *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1069–70 (9th Cir. 2016)). Such claims are "evaluated under an objective deliberate indifference standard." *Id.* at 1125. A successful claim satisfies four elements:

(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

(ii) those conditions put the plaintiff at substantial risk of suffering serious harm;

(iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

(iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* The third element demands that the "defendant's conduct . . . be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Castro*, 833 F.3d at 1071 (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)).

Warner alleges that he sought treatment for pain and that Dr. Dusing failed to adequately respond to his medical needs. When Warner was placed in the detention center, he was in a "tremendous amount of pain" due to preexisting injuries to his neck, back, and hip. (Doc. 64-1 at 4.) Prior to his detention, Warner took Gabapentin, a medication that affects the nervous system, and Tramadol, an opiate, to manage his pain.

Dusing first saw Warner on December 12, 2016 for Warner's primary complaint of "back pain," which Dusing noted as an "ongoing" injury that had been treated with Gabapentin. (Doc. 63-1 at 1.) Dusing's physical examination

demonstrated the presence of degenerative disc disease. (Doc. 63-1 at 2.) Dusing prescribed Gabapentin and Robaxin, a muscle relaxer. (Doc. 63-1 at 2.)

The exact date of Warner's next visit with Dusing is unclear, but Warner presented with a primary complaint of right hip pain. During that visit, Dusing also assessed and prepared a treatment plan for Warner's celiac disease. Dusing noted that Warner had "opted not to take Robaxin." (Doc. 63-1 at 3.) He wrote a new prescription for Tylenol, a non-opiate pain reliever, and ordered that Warner continue his existing medications. (Doc. 63-1 at 4.)

Dusing again examined Warner on March 20, 2017. (Doc. 63-1 at 5–6.) He described Warner's primary complaint as intestinal, but he noted during his exam Warner's history of chronic back and hip pain, as well as acute pain in Warner's back hip. (Doc. 63-1 at 5.) Dusing increased Warner's Gabapentin dosage and prescribed a short course of Nexium, a drug that targets gastrointestinal disorders, and Medrol Dosepak, an anti-inflammatory steroid medication.

Warner alleges that he was finally prescribed Tramadol in May 2017, but only after he threatened litigation. (Doc. 2 at 8.) Shortly thereafter, Warner was transferred to the state psychiatric hospital. There, the treating psychiatrist apparently reduced Warner's dosage of Tramadol because she determined that it caused Warner to exhibit aggressive behavior. (Doc. 64-1 at 4–6.) When Warner

-5-

returned to the Flathead County Detention Center, Dusing initially maintained Warner's Tramadol prescription at the lower, once-daily dose prescribed by the psychiatrist at the state hospital. (Doc. 65-1 at 1.) However, by September 2017, at the latest, Warner was again taking two doses of Tramadol a day per Dusing's instructions. (Doc. 65-1 at 4.)

In short, the uncontradicted evidence establishes that: (1) Warner was prescribed five separate medications for his pain—Gabapentin, Robaxin, Tylenol, Medrol Dosepak, and Tramadol[1]; (2) Warner was prescribed Gabapentin, one of his requested medications, from early in his period of detention; (3) Dusing performed physical exams at least three times between December 2016 and May 2017, documenting and attempting to treat Warner's pain during each medical visit; and (4) Warner wanted to receive a prescription for Tramadol upon his initial detention, but he ultimately did receive the requested prescription. Thus, the only question is whether Dusing's failure to prescribe Tramadol sooner constitutes deliberate indifference to Warner's health or safety.

Applying the Ninth Circuit's objective deliberate indifference standard, the Court finds that the undisputed facts demonstrate that Dusing did not act

---

[1] Warner testified at his deposition that he stopped taking the Robaxin without a doctor's order because it exacerbated his pain symptoms. He also testified that the one drug not necessarily recognizable as a pain medication, Medrol Dosepak, helped alleviate his pain. (Doc. 64-1 at 5.)

objectively unreasonably by attempting to manage Warner's pain with non-opiate medications. *See Gordon*, 888 F.3d at 1125. At each visit, Dusing documented Warner's chronic and acute pain symptoms, and he adjusted Warner's medications to find a workable pain management regimen. Assuming for the sake of argument that Dusing's decision to avoid prescribing Tramadol sooner "put [Warner] at substantial risk of suffering serious harm" and that Dusing caused Warner to suffer injury, the Court cannot find that Dusing's decision was "objectively unreasonable." *Id.* Although the initial medication regimens ultimately proved unsuccessful, Dusing acted reasonably when he experimented with alternative pain medications prior to prescribing the specific painkiller Warner requested. Indeed, Warner testified at his deposition that his pain has improved after his sentencing and placement at the Montana State Prison, even though the State Prison will not issue either Gabapentin or Tramadol to inmates. (Doc. 64-1 at 5.)

Accordingly, IT IS ORDERED that Judge Lynch's Findings and Recommendation (Doc. 108) is ADOPTED in part and REJECTED in part. The Findings and Recommendation is adopted as to Warner's claims against CBM and rejected as to Warner's claims against Dusing. The remaining findings and recommendation are moot.

IT IS FURTHER ORDERED that the motions for summary judgment of Defendants CBM Managed Services (Doc. 58) and James Dusing (Doc. 61) are GRANTED. The Clerk of Court shall enter judgment for the remaining defendants and close this case.

DATED this 5th day of June, 2019.

Dana L. Christensen, Chief Judge
United States District Court